UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ERNESTINE KING,                                    Civil Action No. 14-11157


     Plaintiff,                                    HON. STEPHEN J. MURPHY, III
                                                   U.S. District Judge
v.                                                 HON. R.  STEVEN WHALEN
                                                   U.S. Magistrate Judge

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Ernestine King ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below,  I recommend that Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

## PROCEDURAL HISTORY

On May 8, 2008, Plaintiff filed  applications for SSI and DIB, alleging disability as of March 12, 2007 (Tr. 256-257, 258-260).  After the initial denial of the claim, she

requested an administrative hearing, held on September 7, 2010 in Columbia, South Carolina before Administrative Law Judge ("ALJ") Frances W. Williams (Tr. 59). On October 22, 2010, ALJ Williams found Plaintiff not disabled (Tr. 125). On May 18, 2012, the Appeals Council remanded the case to the administrative level for further consideration of Plaintiff's exertional abilities and the effect of obesity on her work abilities (Tr. 130-132). The Appeals Council also noted that the ALJ erroneously referred to a "Single Decision Maker" ("SDM") (a non-medical source) as a "State Agency medical physician" (Tr. 130).

On November 5, 2012, ALJ Oksana Xenos presided at a second hearing, held in Detroit, Michigan (Tr. 31). Plaintiff, represented by attorney Donald Peter, testified (Tr. 34-50), as did Vocational Expert ("VE") Diane Regan (Tr. 50-57). On November 30, 2012, ALJ Xenos found that Plaintiff was not disabled (Tr. 25). On January 22, 2014, the Appeals Council denied review (Tr. 1-6). Plaintiff filed for judicial review of the Commissioner's decision on March 19, 2014.

## BACKGROUND FACTS

Plaintiff, born April 18, 1973, was 39 when the ALJ issued her decision (Tr. 25, 256). She completed two years of college (Tr. 300) and worked previously as an automotive assembler and bank clerk (Tr. 295). Her application for benefits alleges disability as a result of bilateral Carpal Tunnel Syndrome ("CTS"), De Quervain's Syndrome,[1] epicondylitis,

---

[1]De Quervain's Syndrome is "a painful condition affecting the tendons on the thumb side of [the] wrist." http://www.mayoclinic.org/diseases- conditions/de-quervains -tenosynovitis /basics/definition/con-2002723 (last visited, February 20, 2015).

Irritable Bowel Syndrome ("IBS") with diverticulitis, and hypertension (Tr. 294).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

She lived with her parents and three children in Detroit, Michigan (Tr. 35-36). She was right-handed, stood 5' 2 ½" and weighed 194 pounds (Tr. 35). She completed two years of college courses but did not hold an associate's degree (Tr. 35). Her college major was business administration (Tr. 35). Her last job, performed in September, 2009, involved "restricted" assembly line work (Tr. 36). In that position, she was positioned at the "end of the line" and was required to inspect the work of her coworkers (Tr. 37). At the time she stopped working, she experienced CTS causing tingling and numbness of the hands, wrists, and fingers as well as IBS (Tr. 36). She had tried without success to procure other work (Tr. 37). Before working on the assembly line, she worked in the banking industry, but would be unable to "count money," or hold other positions requiring repetitive hand movements (Tr. 37).

The condition of IBS required her to use the bathroom six to eight times each day (Tr. 38). The regimen prescribed for IBS did not improve her condition (Tr. 38). She had been advised to add fiber to her diet, but noted that a number of foods irritated her stomach (Tr. 38). She had experienced IBS as early as 1998 (Tr. 39). The condition discouraged her from going out in public (Tr. 39). The condition of hypertension caused headaches three to four times a week for around four hours (Tr. 39-40). The condition also caused dizziness (Tr. 40).

Plaintiff drove on an occasional basis (Tr. 39). She did not experience problems sitting or standing (Tr. 40). She walked to the grocery store once or twice a month (Tr. 40). She was unable to lift even five pounds during times that she experienced finger and hand numbness (Tr. 41). She did not attend church (Tr. 42). She owned a four-pound "yorkie" (Tr. 42). She watched movies and used her computer for 15 to 20 minutes once or twice a week (Tr. 42). She dined out two to three times a month (Tr. 43). She did not smoke and drank on a rare basis only (Tr. 44). She experienced sleep disturbances due to hand numbness (Tr. 44). She customarily took a nap each day after taking her blood pressure medicine (Tr. 44-45). She had been advised to undergo carpal tunnel release surgery by all of her treating physicians but currently did not have health care insurance (Tr. 45).

In response to questioning by her attorney, Plaintiff stated that she was unable to play cards due to hand and finger numbness (Tr. 46). For identical reasons, she was unable to write for any length of time and experienced difficulty manipulating buttons, zippers, jars, and coins (Tr. 46). She alleged that she was unable to hold a telephone for more than two minutes or stir food (Tr. 46). She reported that before ceasing work, she took significant sick leave due to IBS (Tr. 48). She experienced "accidents" at work due to IBS (Tr. 49). She stated that she had been advised to control her diet (Tr. 50). She testified that Workers' Compensation would not pay for IBS treatment (Tr. 50).

### B.   Medical Evidence

#### 1. Treating Sources

In May, 2004, Surendra Jolly, M.D. restricted Plaintiff from repetitive hand motions (Tr. 551). In July, 2004, Dr. Jolly noted that Plaintiff used bilateral wrist splints (Tr. 552). In May, 2005, Plaintiff sought treatment for IBS (Tr. 404). She was advised to add fiber to her diet (Tr. 404). The following month, Plaintiff reported an improvement in the condition (Tr. 403). She reported that she had "been offered" but refused surgery for CTS (Tr. 403). She reported a return of the IBS symptoms after ceasing the use of fiber (Tr. 402). In July, 2005, Plaintiff was diagnosed with diverticulosis (Tr. 542). In October, 2010, Plaintiff began physical therapy for tendonitis (Tr. 359). Latha Baddigam, M.D. restricted her from lifting more than 10 pounds, repetitive hand movements, and prolonged gripping until November 30, 2005 (Tr. 360, 405). Plaintiff reported that she used wrist splints at night and during the day for long drives (Tr. 361). She demonstrated a full range of motion and full strength in all extremities (Tr. 364). She was diagnosed with CTS, worse on right than left, and right bicipital tendonitis (Tr. 365). She was advised to take Motrin three to four times daily and wear wrists splints both day and night (Tr. 365). Nerve conduction studies from the following month show the absence of CTS (Tr. 369-371). Notes from the following month state that Plaintiff was no longer taking medication because she was pregnant (Tr. 374).

In January, 2006, she was restricted from overhead activities lasting more than three minutes (Tr. 378, 406-407). Therapy records note deficits in activities of daily living due to

a restricted upper extremity range of motion and strength (Tr. 411, 421). Her prognosis was deemed "good" (Tr. 411). March, 2006 physical therapy records state that Plaintiff's neck pain had resolved (Tr. 383). In September, 2006, Plaintiff denied neck or left wrist pain (Tr. 385). Jerry A. Taylor, D.O. noted Plaintiff's report of CTS symptoms but noted a full range of upper extremity motion (Tr. 465-466). Plaintiff stated that she was not currently interested in carpal tunnel surgery (Tr. 466). The following month, an MRI of the cervical spine showed spurring at C4-C5 but no stenosis or other abnormalities (Tr. 386).

In April, 2008, Dr. Taylor opined that Plaintiff required surgery for CTS "bilaterally, beginning on the right" (Tr. 389). He advised "continuing work restrictions favoring both upper extremities . . ." (Tr. 293). June and July, 2008 psychiatric treating notes by Pawan Garg, M.D. state that Plaintiff experienced anxiety related to work restriction imposed by her upper extremity problems (Tr. 442-443). In May, 2009, Dr. Taylor found that Plaintiff was unable to perform even a modified form of her present job but found that her long term prognosis was unknown, depending on her response to carpal tunnel surgery (Tr. 459). March, 2010 treating notes state that Plaintiff experienced increased hand pain after increasing her computer use (Tr. 445). The same month, Benjamin A. Lanza, D.P.M. diagnosed with Plaintiff with hammer toes, finding that the condition was treatable with "debridement and shoe therapy" (Tr. 452).

### 2. Non-Treating Sources

Work restrictions imposed between January, 2007 and May, 2008 include no lifting

over five pounds (Tr. 453-457).  In February, 2011, Jefrey R.A. Fishman, M.D. examined Plaintiff, recommending "avoidance of impact or vibratory tools, avoidance of awkward wrist positions and avoidance of forceful gripping or grasping" (Tr. 507).

In July, 2012, Moises Alviar, M.D. examined Plaintiff on behalf of the SSA, noting the presence of IBS, bilateral CTS and bilateral De Quervain's tenosynovitis (Tr. 489).  Dr. Alviar found that Plaintiff would be unable to lift even 10 pounds but could sit four to six hours, stand for two hours, and walk for two hours in an eight-hour workday (Tr. 495).  He found "no problem with the lower extremities" (Tr. 496).  He found that Plaintiff was limited to occasional climbing of ladders or scaffolds, balancing, crouching, and crawling, and frequent climbing of stairs, stooping, and kneeling (Tr. 497).  He found that Plaintiff was limited to occasional reaching, handling, and fingering and precluded from all pushing/pulling (Tr. 498).   He found that Plaintiff should avoid temperature extremes and vibrations with a limitation to occasional exposure to unprotected heights, moving machinery, or operating a vehicle (Tr. 499).  He found that Plaintiff could nonetheless perform a wide range of daily activities (Tr. 500).

### C.   Vocational Expert Testimony

VE Regan found that Plaintiff's former job as a bank teller, which was skilled and exertionally light, had skills transferable to the light work of a cashier and customer service representative (financial industry)[2] (Tr. 51).  The ALJ then posed the following question to

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds

VE Regan, describing a hypothetical individual of Plaintiff's age, education and work experience:

> [C]an stand and/or walk six hours in eight, can sit six hours in eight, can lift five pounds, can frequently handle, finger, feel, and reach with her upper extremities, should avoid vibration and temperature extremes, can frequently climb stairs and ramps, stoop, and kneel, can occasionally balance, crouch, and crawl, cannot climb ladders, ropes, or scaffolds. Will this individual be able to perform any of the claimant's past work? (Tr. 52).

The VE replied that given the above limitations, the individual would be unable to perform any of Plaintiff's past relevant work but possessed the transferrable skills required to perform the work of a customer service representative (Tr. 52). In addition, she found that the above-described individual could perform the light, unskilled work of checker/inspector (1,500 jobs existing in the region of southeast Michigan); usher (500); and greeter (1,200) (Tr. 53). The VE testified that the job of customer service representative (as generally performed) would require a higher skill level than at the level previously performed (Tr. 53-54). The VE stated that if the above-described individual were also limited to occasional handling and fingering with her upper extremities, the usher job and the checker/visual inspector position would remain and the greeter job would be eliminated, (Tr. 53).

In response to questioning by Plaintiff's attorney, the VE testified that if the same

---

at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

-8-

individual were limited to standing or walking for only two hours a day, she could perform the sedentary work of a surveillance system monitor (Tr. 800) and inspector (500) (Tr. 56). The VE testified that if a "sit/stand at will option" were included among the limitations, the sedentary positions would remain unchanged (Tr. 56). She testified that the usher job would be eliminated and the light checker/ inspector position would remain the same (Tr. 56). The VE stated that if the individual were off task at least 20 percent of the workday or were absent from work more than one day a month, all work would be precluded (Tr. 57). She concluded her testimony by stating that the need to be "reasonably in close proximity to a bathroom" would not change the job numbers (Tr. 57).

### D.  The ALJ's Decision

ALJ Xenos found that while Plaintiff earned $106,800 in 2009, the earnings reflected sick leave time and a buyout from her former employer (Tr. 18). Nonetheless, she found that Plaintiff had not engaged in substantial gainful activity since March 12, 2007 (Tr. 18). Citing the medical records, the ALJ found that Plaintiff experienced the "severe" impairments of "[CTS]; De Quervain's tenosynovitis; epidondylitis; and [IBS]" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18-19). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following limitations:

> [C]an stand/walk 6 hours in 8; can sit 6 hours in 8; and can lift 5 lbs.  The claimant can frequently climb stairs and ramps, stoop, and kneel.  The claimant can occasionally balance, crouch, and crawl.  The claimant cannot climb ladders, ropes, or scaffolds.  The claimant can frequently reach and feel with

her upper extremities. The claimant can occasionally handle and finger with her upper extremities. The claimant should avoid vibration and temperature extremes; and requires reasonably close proximity to a bathroom (Tr. 19).

Citing the VE's job numbers, the ALJ determined that while Plaintiff was unable to perform any of her past relevant work, she could work as an inspector and usher (Tr. 24).

The ALJ discounted the allegations of disability (Tr. 20-23). Despite Plaintiff's claimed limitations, the ALJ noted that Plaintiff acknowledged that she was able to take care of her three minor children, shop, prepare meals, wash clothes, iron, and shop (Tr. 20). The ALJ noted Plaintiff statement that she was able to drive on a daily basis (Tr. 20). ALJ Xenos observed that although Plaintiff had alleged disability since March, 2007, she had since received unemployment compensation which required her to assert that she was "ready, willing, and able to work" (Tr. 20). The ALJ noted that none of Plaintiff's treating sources had found a greater limitations than those found in the RFC (Tr. 21).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

-10-

"presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff makes three main arguments in favor of remand.  First, she contends that the RFC found in the administrative opinion did not fully account for her limitations as a result of IBS.  *Plaintiff's Brief,* 13-15, *Docket #15* (*citing* Tr. 19).  She argues further that although the ALJ stated that Dr. Taylor's opinion had been factored into the RFC, the RFC does not include Dr. Taylor's finding of a need to avoid repetitive grasping. *Id.* at 15-16 (*citing* Tr. 391).  On a related note, Plaintiff argues that the failure to include all her relevant limitations in the hypothetical question to the VE invalidated the VE's job testimony. *Id.* at 17-18 (*citing* Tr. 52-53).   Next, Plaintiff contends that her allegations of limitation were improperly discounted on the basis that she collected unemployment benefits.  *Id.* at 18-20.  She argues that the ALJ also erred by failing to consider the claims of medication side effects.  *Id.* at 19-20.

The ALJ's credibility determination is partially dispositive of the other two arguments and as such, will be discussed first.  Because the RFC found in the administrative opinion mirrors the hypothetical limitations posed to the VE, the RFC and vocational testimony arguments can be considered in tandem.

-12-

### A.  The Credibility Determination

Contrary to Plaintiff's argument, the ALJ did not err in finding that Plaintiff's receipt of unemployment benefits undermined the disability claim.    A claimant's collection unemployment benefits (requiring her to state that she is ready and able to work) while at the same time alleging disability can be used in support of a non-disability finding. "[A]pplications for unemployment and disability are inherently inconsistent"  *Workman v. Commissioner of Social Sec.,* 105 Fed.Appx. 794, 801, 2004 WL 1745782, *7 (6th Cir. June 29, 2004)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.1983).  However, before discounting a disability claim on this basis the ALJ must consider the entirety of circumstances surrounding the application for benefits. *Smith v. Astrue*, WL 3897752, *5 (E.D.Mich. July 6, 2011).

The ALJ did not simply find that the disability allegations were undermined by the receipt of unemployment benefits.  The ALJ noted Plaintiff's acknowledgment that during the time she was collecting benefits, she was *looking* for work (Tr. 20).  Plaintiff's belief that she was capable of working, by itself, stands at odds her claim that she was disabled.  Plaintiff's claim under 20 C.F.R. § 416.210 that she would not have been eligible for disability benefits had she not applied for unemployment benefits is wholly erroneous.  As noted by Defendant, § 416.210 requires one must apply for various other benefits only "*if eligible.*"  *Defendant's Brief, 11, Docket #17.* (Emphasis in original).  Common sense dictates that the collection of unemployment benefits, premised on the ability to work, is not a prerequisite to filing a

-13-

diability claim.

In support of the credibility determination, the ALJ also noted that in May, 2008, Plaintiff acknowledged that she could "prepare meals, wash clothes, iron, . . . go shopping," and drive her children to school (Tr. 20).   Plaintiff argues that her ability to perform these activities does not equate with the ability to perform substantial gainful activity.  However, at a minimum, her admitted activities contradict the testimony that she she was restricted to watching movies and napping for extended portions of her waking hours (Tr.  42-45).  The ALJ also observed that Plaintiff did not appear to be "in any obvious pain or discomfort" during the hearing (Tr. 23).

Plaintiff also faults the ALJ for finding the absence of "'significant'" medication side effects, *Plaintiff's Brief* at 19 (*citing* Tr. 23).   Plaintiff is correct an ALJ must consider the "type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms." 20 C.F.R. 404.1529(c)(3).  However, the ALJ did not err in finding that medication side effects would not impact Plaintiff's work abilities (Tr. 20, 23).   While Plaintiff alleged side effects from blood pressure medication, July, 2012 consultative records state that Plaintiff had not taken the medication for the condition of hypertension in two years (Tr. 22, 489).  Likewise, although Plaintiff contends that she was limited to over-the-counter pain medication because of certain medication side effects, the fact that she did not take stronger pain medicine due to side effects is not inconsistent with the conclusion that she did not experience side effects which would interfere with her ability to work (Tr. 20).

-14-

Because the credibility findings are well explained and well supported, the discretion generally allotted to an ALJ's credibility determination is appropriate here. *Cruse v. Comm'r of Soc. Sec*., 502 F.3d 532, 542 (6th Cir.2007); See also *Anderson v. Bowen,* 868 F.2d 921, 927 (7th Cir.1989) (citing *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record' ").

### B.  The Hypothetical Question and RFC

Plaintiff argues that  hypothetical question to the VE, forming the basis for the RFC found in the administrative decision, did not include all of her relevant limitation.  *Plaintiff's Brief* at 13-18.

Vocational testimony given in response to a hypothetical question constitutes substantial evidence only if it accurately portrays the individual's relevant impairments. *Varley v. Commissioner of Health and Human Services*, 820 F.2d 777, 779 (6th Cir.1987). While the Sixth Circuit has rejected the proposition that all of the claimant's maladies must be listed verbatim, "[t]he hypothetical question ... should include an accurate portrayal of [a claimant's] individual physical and mental impairments." *Webb v. Commissioner of Social Sec.,* 368 F.3d 629, 632 (6th Cir.2004).

### 1.  IBS

Plaintiff contends that the hypothetical question/RFC limitation of the need to be reasonably close to a bathroom (Tr. 19, 57) shows that the ALJ credited the professed limitations as a result of IBS. *Plaintiff's Brief* at 13-15.  However, Plaintiff argues that the

work-related limitation of bathroom proximity does not adequately address her allegations that she was required to make unscheduled trips to the bathroom up to eight times a day. *Id.* (*citing* Tr. 38).

Contrary to this argument, the fact that the ALJ acknowledged that IBS created some degree of restriction did not require her to accept Plaintiff's professed degree of limitation. The ALJ noted that Plaintiff's claim of disability level IBS was undermined by the fact that she took only over-the-counter products for the condition (Tr. 20). The ALJ reasonably noted that although Plaintiff first reported the condition in 1998 or 1999, the condition did not prevent her from working until at least 2007 (Tr. 23). Substantial evidence supports the conclusion that "reasonably close proximity to a bathroom" accounted for Plaintiff's work-related limitations as a result of IBS.

### 2. Dr. Taylor's Findings

Plaintiff also argues that although the ALJ stated that she "incorporated" Dr. Taylor's April, 2008 work restrictions into the RFC, Dr. Taylor's restriction of "no repetitive grasping" is omitted from both the hypothetical question and RFC. *Plaintiff's Brief* at 15-16 (*citing* Tr. 19, 52-53, 391). However, as noted by Defendant, the RFC did not include "no repetitive grasping" but substituted the modifiers of "occasionally (one-third of the time) handle and finger . . ." *Defendant's Brief* at 14 (*citing* Tr. 19). Because these modifiers found in the RFC adequately reflect Dr. Taylor's findings, the omission of "no repetitive grasping" from the RFC does not constitute error.

-16-

On a related note, Plaintiff argues that the five-pound lifting restriction in the RFC is inconsistent with the finding that she could perform exertionally "light" work which regularly requires frequent 10-pound lifting. *Plaintiff's Brief* at 16; *See fn 2, above.* However, the Plaintiff's limitation to lifting five pounds does not preclude all light work.   In performing light work, "the weight lifted may be very little," so long as a "good deal of walking or standing" is involved. § 404.1567(b). *See Billotti v. Commissioner of Social Sec.*, 2014 WL 2615401, *8 (E.D.Mich. June 12, 2014) ("it is not a given that [a] five-pound lifting restriction ... automatically implies a limitation to sedentary work").

### 3. SSR 00-4p

Plaintiff also argues that the finding that she was capable of light work, despite the inability to lift more five pounds, ought to have been clarified by the VE. *Plaintiff's Brief* at 18 (*citing* SSR 004p).

SSR 00–4p "imposes an affirmative duty on ALJs to ask VEs if the evidence that they have provided 'conflicts with the information provided in the DOT.'" *Lindsley v. Commissioner of Social Sec.,* 560 F.3d 601, 606 (6th Cir.2009)(citing SSR 00–4p, 2000 WL 1898704, *4).   Plaintiff's argument that the ALJ neglected to make the "conflict" inquiry is not well taken.   The ALJ complied with the requirements of the Regulation by asking the VE if her testimony was consistent with the information found in the DOT (Tr. 56).   The VE answered in the affirmative, adding that the testimony regarding a sit/stand option was based on her own experience (Tr. 56).   The VE's testimony that her findings regarding the sit/stand

-17-

option was based on her professional experience, rather than the DOT, does not represent a "conflict," given that the DOT is silent as to the need for a sit/stand option (Tr. 56). Having made the required inquiry and taken testimony that the job findings were not inconsistent with the information found in the DOT, the ALJ was not obliged to do more. "'Nothing in SSR 00–4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.'" *Lindsley* at 606 (citing *Martin v. Comm'r of Soc. Sec.,* 170 Fed.Appx. 369, 374 (6th Cir. March 1, 2006)). Further, the fact that Plaintiff was capable of only a reduced range of light work is not fatal to the Step Five findings. "The ALJ may choose to rely on the VE's testimony in complex cases, given the VE's ability to tailor h[is] finding to an 'individual's particular residual functional capacity.' The function of the VE is to advise the ALJ of jobs found among various categories of employment which the claimant can perform with h[is] limitations." *Beinlich v. Commissioner,* No. 08–4500, 2009 WL 2877930, at *4 (6th Cir.Sept.9, 2009) (*citing Wright v. Massanari,* 321 F.3d 611, 616 (6th Cir.2003)). Because the ALJ fulfilled the requirements of SSR 00-4p in asking whether the vocational testimony conflicted with the DOT, a remand on this basis is not warranted.

In closing, my recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's limitations as a result of hand and wrist restrictions. Nonetheless, because the administrative decision was well articulated and within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by

-18-

this Court.  *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: February 24, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 24, 2015, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager

-20-